UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| R.C.F., a minor, by and through his mother, DONNA ANDERSON, <br><br> Plaintiff <br><br> v. <br><br> RANGELEY LAKES HERITAGE TRUST, INC., <br><br> Defendant | VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL |

## **INTRODUCTION**

Plaintiff, R.C.F., a minor, by and through his mother, Donna Anderson, hereby alleges the following facts and claims for relief:

1. R.C.F. is a ten year old child who resides in Rangeley, Maine.

2. Defendant Rangeley Lakes Heritage Trust ("RLHT" or "Defendant") is a nonprofit corporation that owns and runs EcoVenture, Rangeley Lake Region's premiere summer day camp for children.

3. Plaintiff Donna Anderson ("Anderson" or "Plaintiff") brings this lawsuit on behalf of her son, R.C.F., following RLHT's exclusion of R.C.F. at EcoVenture because of his disability. Although R.F.C. is, and was at all relevant times, qualified to attend EcoVenture with the modification of having his paid, professional 1:1 aide present at no cost to RLHT, RLHT summarily denied R.C.F.'s application and refused Anderson's multiple requests to reconsider. Plaintiff demands a jury trial.

4. This summer, EcoVenture offers six weeks of day camp, and the first week of camp starts on Wednesday, July 5, 2017. Anderson seeks immediate, injunctive relief to require Defendant to allow R.C.F. to go to camp with his no cost 1:1 aide.

5. Accordingly, Plaintiff brings this action seeking declaratory and injunctive relief as well as civil penal, compensatory damages and attorneys' fees and costs against Defendant for violations of Title III of the Americans with Disabilities Act (42 U.S.C. §§ 12101 et seq.) ("ADA"), Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794 et seq.) ("Section 504"), Maine Human Rights Act (5 MRS 4551 et seq.).

## JURISDICTION AND VENUE

6. This action arises under federal laws, the ADA and Section 504. As such, this Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

7. Venue is proper in the United States District Court for the District of Maine under 28 U.S.C. §3191(b) because Defendant is located in Oquossoc, Maine and EcoVenture is located in Rangeley Plantation, Maine, and all of the acts and/or omissions alleged herein occurred in this judicial district. 28 U.S.C. § 3191(b).

## PARTIES

8. R.C.F. is a ten year old boy who resides in the Town of Rangeley, County of Franklin, and State of Maine with his mother and sister. He just completed the third grade at Rangeley Lakes Regional School (RLRS) and will enter the fourth grade at RLRS in September 2017. R.C.F. has high functioning autism and Attention Deficit Hyperactivity Disorder (ADHD). R.C.F. at all relevant times has been a "qualified individual with a disability" within the meaning

of the ADA, Section 504, and the Maine Human Rights Act. R.C.F. appears in this action by and through his mother, Donna Anderson.

9. RLHT is located in the County of Franklin, State of Maine. RLHT is a private entity that owns, leases (or leases to), or operates a place of public accommodation whose operations affect commerce. RLHT owns and operates camp EcoVenture, a place of education and recreation for children from age five and up. On information and belief, at all times relevant to this action, RLHT was the recipient of federal financial assistance within the meaning of Section 504.

## ADDITIONAL FACTS COMMON TO ALL CLAIMS

10. R.C.F. has mental impairments, high functioning autism and attention deficit hyperactivity disorder (ADHD). Each of these conditions constitutes a physical or mental impairment that substantially limits R.C.F.'s major life activities, including focus and concentration, thinking, communication, social interaction, and each of these conditions substantially limits R.C.F.'s major bodily functions, including brain functions, all under the ADA, Section 504 and the Maine Human Rights Act ("MHRA").

11. R.C.F. has a physical impairment that significantly impacts his physical or mental health under the MHRA. R.C.F. has a physical or mental impairment that requires special education and related services under the MHRA. At all relevant times, R.C.F. receives and received special education services, Section 28 and other services due to his disability, within the meaning of the MHRA. R.C.F. has a pervasive developmental disorder (autism), a per se disability, without regard to severity, under the MHRA.

12. R.C.F. has an actual disability, autism and ADHD, under the ADA, Section 504 and the MHRA. R.C.F. has a record of disability, including autism and ADHD, under the ADA,

Section 504 and the Maine Human Rights Act. At all relevant times, RLHT regarded R.C.F. as having a disability under the ADA, Section 504 and the Maine Human Rights Act, even though R.C.F. was perfectly capable of attending EcoVenture with his 1:1 aide at no cost to RLHT.

13. At all times, R.C.F. has been a qualified individual with a disability, in that he meets the eligibility criteria to attend camp at EcoVenture and he is able to participate with or without reasonable modification. R.C.F. is currently 10 years old and entering the fourth grade at RLRS. R.C.F. requested reasonable modification, to attend camp with his paid 1:1 aide, at no cost to RLHT. This is the same accommodation that he receives in his mainstream classroom at RLRS, and it is an effective accommodation. As a student at RLRS, R.C.F. is also eligible for the discounted rate to attend EcoVenture.

14. According to RLHT, EcoVenture is "the Rangeley Lakes Region's premiere summer camp" whose mission is to "[e]ngage the hearts of campers as they explore and connect to the natural world and to develop a stewardship ethic while promoting the development of team building and problem solving skills." http://www.rlht.org/kids-camp/survivalguide

15. RLHT's website indicates that "[e]ach day at [EcoVenture] camp is action-packed! Engaging in new age appropriate adventures each day, campers forge new friends and explore the natural world. They will be hiking, playing and exploring in the woods and waters, canoeing, kayaking, swimming and much more." http://www.rlht.org/kids-camp

16. Children are eligible to attend EcoVenture from age 5-6 ("Grasshoppers") through 6th grade and above ("Bobcats").

17. The majority of EcoVenture participants are students from RLRS. RLHT offers RLRS students a discount rate of $40 per week or $175 for the full six weeks. As stated on the

4

EcoVenture application, families who need financial assistance are invited to apply for a scholarship if cost is an obstacle to attending camp.

18.     R.C.F. and Anderson heard about EcoVenture in 2015 when R.C.F. brought home information from school about the camp. R.C.F. expressed interest in going to the camp. Anderson thought it would be a wonderful opportunity for her son. Therefore, around May 2015, Anderson contacted RLHT to inquire about R.C.F. applying to go to camp. She disclosed that R.C.F. has autism and ADHD. RLHT Executive Director Chris Devine ("Devine") told Anderson that they would <u>not accept an application</u> for R.C.F. because of R.C.F.'s disability. He indicated they were unable to make accommodations as needed for R.C.F. as well as others with similar needs.

19.     Around May 2017, the social worker at R.C.F.'s school, Holly Haggan Austin ("Austin") suggested to Anderson that R.C.F. apply go to EcoVenture this summer. R.C.F. express interest in going to EcoVenture. Anderson agreed to have Austin contact RLHT to inquire about R.C.F attending.

20.     On May 8, 2017, Austin emailed RLHT's Program Manager Andrea Laliberte ("Laliberte") to generally inquire if EcoVenture would "entertain an application" from a student with a "1 to 1 [aide] for a diagnosed condition that affects his decision making/behavior" and "[the 1:1] would be with him at all times." Austin also offered to submit whatever documentation regarding the student was necessary.

21.     On May 15, 2017 at 11:05 a.m., Austin emailed Laliberte again because Laliberte had not replied to Austin's May 8 email. On May 15, Austin again asked if EcoVenture could entertain an application from a child with a diagnosed condition who would have a 1:1 aide.

5

Austin also indicated that she has permission to discuss this child and offered her phone number to discuss the child's application further.

22. On May 15, 2017 at 11:18 a.m., Laliberte apologized "for the delay in my response." Laliberte informed Austin that EcoVenture <u>would not accept an application</u> for the child with a disability, stating "[a]t this time EcoVenture is unable to accommodate those circumstances in terms of safety, transportation and staffing."

23. On May 18, 2017, Austin emailed Laliberte to ask her again to reconsider the denial of a child with a disability to be admitted to camp. Austin stated that the "lack of interest in including children with disabilities is continually heartbreaking. I feel that this is yet another example of exceptional children in this community being turned away from opportunities." Austin further wrote "I am hoping you will reconsider" and "I also wanted to make sure that you understand that he will have a behavioral health provider with him and we are merely asking for him to participate one day per week." She stated "Again, please feel free to call me to discuss this. I appreciate your time."

24. Laliberte <u>never responded</u> to Austin's May 18, 2017 email.

25. On June 7, 2017, Anderson submitted R.C.F.'s application to attend EcoVenture for the season starting on July 5, 2017. On the application, Anderson stated that R.C.F. has high functioning autism and that he currently has assigned hours with a BHP (Behavioral Health Professional) to meet goals in a social setting. Anderson included her name, address, phone number, as well as her R.C.F.'s name, birthdate and entering grade. Anderson signed all forms to grant the camp permissions and indemnifications. Austin filled out the part of the application for the Ed and Patty Kfoury Scholarship. Austin wrote that she was "writing to support the request for scholarship funding for [R.C.F]. The benefit of his ability to participate could be great, but

funding would be impossible according to his family financial situation. Thank you for considering his application for scholarship."

26. On June 7, 2017 at 11:16 a.m., around the same time she submitted the application, Anderson emailed Laliberte. In the email, Anderson stated she was applying for her son to attend camp at Eco-Venture. Anderson noted that R.C.F. has a diagnosis of high functioning autism and that he is verbal, independent in self-care of the basic needs of life, and he is not a harm to himself or others. Anderson stated that he loved friends and loves the outdoors, and <u>he will have a trained professional with him</u> to meet his goals in social situations while at EcoVenture.

27. Anderson also stated in her email to Laliberte that she was requesting an opportunity for her son to be part of this wonderful camp opportunity. She invited Laliberte to meet with her if there were questions or concerns. Anderson also offered Laliberte the opportunity to meet R.C.F. so Laliberte could see him and "not just see the diagnosis of autism." Anderson wrote that she appreciated EcoVenture's consideration of her request, and hoped to hear back from Laliberte as soon as possible.

28. On June 7, 2017 at 12:45 p.m., <u>Laliberte replied to Anderson's email in the identical way it had flatly denied it before</u>: "At this time EcoVenture is unable to accommodate those circumstances in terms of safety, transportation, and staffing. Best, Amanda Laliberte."

29. On June 25, 2017, Anderson emailed Laliberte and Devine to ask that they reconsider EcoVenture's denial of R.C.F.'s application.

30. In the email to Laliberte and Devine, Anderson provided the following information: R.C.F. has a disability, autism and attention deficit hyperactivity disorder, but he is qualified and able to attend camp at EcoVenture with the minor, cost free modification of having

7

a 1:1 aide present and R.C.F.'s 1:1 aide, Chris Varney, is a trained BHP. While R.C.F.'s disabilities limit him in life activities such as interacting with others, communicating, and focus, his 1:1 aide would be present to help him stay on task, assist in social situations, or other tasks in which he needs assistance. Anderson reiterated in the email that the 1:1 aide would be <u>at no cost to EcoVenture</u> and that all she was asking of EcoVenture was permission for R.C.F. to attend camp with the 1:1 aide. She also asked that her son be admitted every day of for all six weeks of camp with his aide because funding for the aide was being fully provided at no cost to RLHT.

31. In the June 25, 2017 email to Laliberte and Devine, Anderson also offered to provide additional documentation or information regarding R.C.F.'s disability, need for accommodation, or other relevant information.

32. RLHT did not respond to Anderson's June 25, 2017 email requesting reconsideration of the denial of R.C.F.'s application to EcoVenture.

33. On June 27, 2017, Anderson printed and sent a paper copy of her June 25 email to RLHT via certified, U.S. Mail, return receipt requested.

34. On June 28, 2017, RLHT received the paper copy of the June 25, 2017 email.

35. RLHT never responded to the June 25, 2017 email.  RLHT did not seek any information regarding R.C.F., did not reconsider its denial of his application, and never accepted him to camp.

36. Because of RLHT's refusal to admit R.C.F. due to his disability, R.C.F. does not have equal opportunity to participate in adventures, meet and develop friendships, explore and learn about nature at EcoVenture.  While his nondisabled peers will have a shared experience of hiking, playing and exploring in the woods, playing games or paddling and swimming in the

water together, R.C.F. will be isolated from his peer group and will be at risk of regressing socially and not meeting his goals to develop social skills and peer relationships.

## FIRST CLAIM FOR RELIEF

### Violation of Title III of the Americans with Disabilities Act

### 42 U.S.C. 12101 et seq.

37. Plaintiff realleges and reincorporates by reference all previous paragraphs.

38. Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

39. In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

40. Title III of the ADA provides in pertinent part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182 (a).

41. Title III prohibits the denial of participation based on disability: "It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class … to a denial of the opportunity of the individual or class

to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182 (b)(1)(A)(i).

42. Title III prohibits making inquiries that that screen out, or tend to screen out, individuals with disabilities, unless such criteria are necessary for the provision of those services. 42 U.S.C. 12182(b)(2)(A)(i).

43. Title III prohibits discriminatory administrative methods: "An individual or entity shall not, directly or through contractual or other arrangements, utilize standards or criteria or methods of administration (i) that have the effect of discriminating on the basis of disability; or (ii) that perpetuate the discrimination of others who are subject to common administrative control." 42 U.S.C. § 12182 (b)(1)(D).

44. Under Title III, discrimination includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182 (2)(A)(ii).

45. The United States Department of Justice's regulations implementing Title III, 28 C.F.R. 36.201 *et seq.* prohibit public accommodations from, inter alia,

a. Discriminating on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any private entity who owns, leases (or leases to), or operates a place of public accommodation, 28 C.F.R. § 36.20;

  b. Denying an individual with a disability the opportunity to participate in or benefit from its goods, services, facilities, privileges, advantages, or accommodations, 28 C.F.R. § 36.201(a);

  c. Failing or limiting to afford an individual with a disability an opportunity to participate in or benefits from the aid, benefit, or service that is equal to that afforded others, 28 C.F.R. § 36.201(b);

  d. Utilizing criteria or methods of administration that have the effect of discriminating on the basis of disabilities, 28 C.F.R. § 36.204; and

  e. Utilizing eligibility criteria that screen out or tend to screen out an individual with a disability from fully and equally enjoying any goods and services, 28 C.F.R. § 36.301.

  46. In addition, the U.S. Department of Justice's regulations implementing Title II provide that "[a] public entity shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making the modifications would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations." 28 C.F.R. § 36.302 (a).

  47. At all relevant times, RLHT has been a "public accommodation" within the meaning of Title III of the ADA and offered extracurricular services, programs, activities and recreation through its administration of camp EcoVenture.

  48. At all relevant times, R.C.F. has been a qualified individual with a disability within the meaning of Title III of the ADA and met the essential eligibility requirements for the receipt of the goods, services, benefits, programs and activities of RLHT in this action.

49. Through the acts and omissions of RLHT and its agents and employees described herein, RLHT, with intent, deliberate indifference, and/or reckless disregard, have subjected, and continue to subject, R.C.F. to discrimination on the basis of disability, within the meaning of Title III of the ADA.

50. RLHT could have reasonably provided all services programs and activities in an accessible manner and on an equal basis to R.C.F., to allow him a full, meaningful and substantially equal opportunity to participate.

51. As a direct and proximate result of the aforementioned acts, R.C.F. has suffered and continues to suffer the emotional distress and mental anguish of exclusion. Anderson is prevented from enrolling R.C.F. in the EcoVenture camp unless and until RLHT implements proper policies and procedures to permit R.C.F. access to its goods and services. R.C.F. therefore is entitled to declaratory and injunctive relief in the form of an order requiring RLHT cease its discriminatory practices, modify its policies to allow R.C.F.'s <u>cost free</u> 1:1 aide to attend with him and implement proper policies and procedures in compliance with the ADA.

## SECOND CLAIM FOR RELIEF

### Violation of Section 504 of the Rehabilitation Act of 1973

### 29 U.S.C. § 794

52. Plaintiff realleges and reincorporates by reference all previous paragraphs.

53. Section 504 of the Rehabilitation Act ("Section 504") provides in pertinent part: "No otherwise qualified individual with a disability …. Shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance …"

54. Section 504 provides a remedy to "any person aggrieved by any act or failure to act by any recipient of Federal financial assistance," which includes individuals with disabilities who experience discrimination. 29 U.S.C. § 794a.

55. At all relevant times, R.C.F. has been a qualified individual with a disability (also referred to as a "handicapped person") within the meaning of Section 504 and met the essential eligibility requirements for the receipt of the aids, benefits, services, programs, and activities of RLHT.

56. At all times relevant to this action, RLHT was the recipient of federal financial assistance within the meaning of Section 504.

57. Plaintiff is informed, believes, and based thereon alleges that RLHT's conduct has violated and continues to violate Section 504 and RLHT has committed the acts and omissions alleged herein with intent, deliberate indifference, and/or reckless disregard of R.C.F.'s rights.

58. As a direct and proximate result of the aforementioned acts, R.C.F. suffers mental anguish of exclusion. Plaintiff is prevented from enrolling R.C. F. in the EcoVenture camp and is entitled to declaratory and injunctive relief.

## THIRD CLAIM FOR RELIEF

**Violation of Subchapter V of the Maine Human Rights Act**

**5 M.R.S.A. § 4591,** *et seq.*

59. Plaintiff realleges and reincorporates by reference all previous paragraphs.

60. The MHRA provides "[t]he opportunity for every individual to have equal access to places of public accommodation without discrimination because of … physical or mental disability … is recognized as and declared to be a civil right. 5 M.R.S.A. §4591.

61. It is unlawful public accommodations discrimination for any public accommodation or any person who is the owner, lessor, lessee, proprietor, operator, manager, superintendent, agent or employee of any place of public accommodation to directly or indirectly refuse, discriminate against or in any manner withhold from or deny the full and equal enjoyment to any person, on account of … physical or mental disability … any of the accommodations, advantages, facilities, goods, services or privileges of public accommodation. 5 M.R.S. § 4592 (1).

62. Unlawful discrimination also includes

a. [t]he imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages or accommodations, unless the criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages or accommodations being offered. 5 M.R.S. § 4592 (1) (A).

b. [a] failure to make reasonable modifications in policies, practices or procedures, when modifications are necessary to afford the goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless, in the case of a private entity, the private entity can demonstrate that making the modifications would fundamentally alter the nature of the goods, services, facilities, privileges, advantages or accommodations. 5 M.R.S. § 4592 (1) (B).

c. Subjecting an individual, on the basis of disability, to a denial of the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages or accommodations of that entity. 5 M.R.S. § 4592 (4) (A);

     d.    Utilizing standards or criteria or methods of administration that have the effect of discrimination on the basis of disability and that perpetuate the discrimination of others who are subject to common administrative control. 5 M.R.S. § 4592 (7);

63.    At all relevant times, RLHT was, owned, and/or operated a "place of public accommodation" within the meaning of the MHRA.

64.    By virtue of the acts and omissions alleged herein, RLHT has, with intent, deliberate indifference, and/or reckless disregard, failed to provide R.C.F. with full and equal accommodations, advantages, privileges, and/or services due to R.C.F.'s disabilities and medical conditions, and as such, have violated and continue to violate each of the provisions of the MHRA as alleged herein.

65.    Defendant is liable for each and every violation of the Maine Human Rights Act for civil penal damages, attorneys' fees and costs.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for relief as follows:

     a.    A declaration that Defendant's conduct as alleged herein violated and continues to violate Title III of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the Maine Human Rights Act.

     b.    Immediate injunctive relief to allow R.C.F. to attend camp for all six weeks offered this summer;

     c.    Immediate, preliminary and permanent injunctive relief prohibiting RLHT's discriminatory policies and procedures against providing EcoVenture program participant access for children with disabilities;

  d. Statutory and compensatory damages as permitted by 42 U.S.C. 12133, 29 U.S.C. 794a, and Maine Human Rights Act;

  e. Interest on compensatory damages at the legal rate from the date of injury;

  f. Attorneys' fees and costs of suit as permitted by 42 U.S.C. 12205, 42 U.S.C. 12133, 29 U.S.C. 794(a), and the MHRA;

  g. Such other relief as this Court finds just and proper.

VERIFICATION

I, Donna Anderson, declare as follows:

1. I am the mother of Plaintiff R.C.F., who brings this case by and through me.

2. I have personal knowledge of the facts set out in the foregoing Complaint, and if called upon to testify I would competently testify as to the matters stated herein.

3. I verify under the penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning my son, R.C.F., and Defendant, Rangeley Lakes Heritage Trust, Inc., are true and correct.

DATED: 7/4/17                           */s/ Donna Anderson*
                                        Donna Anderson
                                        Plaintiff


                                        Respectfully Submitted,


DATED: 7/4/17                           */s/Kristin L. Aiello*
                                        By: Kristin L. Aiello
                                        Attorney for Plaintiff
                                        DISABILITY RIGHTS MAINE
                                        24 Stone Street, Suite 204
                                        Augusta, Maine  04330
                                        (207) 626-2774, ext. 223